# Exhibit A



# JOHNSON JOHNSON, LLP

**Email:** djohnson@jjllplaw.com

**Via Email**

Jonathon Townsend
Womble Bond Dickinson (US) LLP
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601

Re: *Andrew Roach v. Motorola Mobility LLC, et al*; Case No. 18STCV02506
**CONFIDENTIAL MEDIATION COMMUNICATION**

Dear Counsel:

At your request, and in preparation for mediation, we write to provide Andrew Roach's ("Roach" or "Plaintiff") settlement demand. This letter is intended as a confidential mediation communication subject to the mediation privilege and may not be used for any purpose outside of settlement and mediation. If you disagree, please cease reading and immediately discard this letter.

This case presents a clear case of liability under California Civil Code Section 3344 for misappropriation of Mr. Roach's image to extensively market, promote, and advertise Defendant Motorola's ("Motorola" or "Defendant") brand, services, and products.

Mr. Roach has had a long history as someone with significant appeal and value to his image. As you are aware, Mr. Roach was, and shockingly continues to be, a prominent face for Motorola, even though Motorola knew its rights were expiring, expired, and after litigation was filed, to the present day. Motorola's conduct is despicable in continuing to intentionally violate Mr. Roach's rights. This is a violation of

Civil Code Section 3344 and a clear case for significant actual, emotional, and punitive damages.

Mr. Roach participated in a shoot with Motorola on March 17, 2016 in exchange for a payment in the amount of $1,800. Such low rates are not uncommon when a model works for the first time with a company to determine whether there is compatibility with a brand. If so, a re-negotiation occurs demanding a substantially higher license fee. All rights Motorola had to use Mr. Roach's image were set to expire no later than May 17, 2017. Motorola and its production company, Los York, were both aware the rights to use Mr. Roach's image would expire no later than May 17, 2017.

Mr. Roach informed Motorola and Los York one month in advance of the rights expiring and received the following email in response from Sue Lee,

> *"Hi Andrew, I reached out to Motorola and they confirmed that the video will be removed by 5/17 [2017], as the new model has now launched. If they do extend beyond, I will be the first one to make sure they pay the extension fee. sue."*

Mr. Roach pre-negotiated a license fee for any additional use of his image one month prior to expiration.

Mr. Roach stated:

> "Hi Melina,
>
> 11 months have passed since the Moto online only web commercial has aired, and I am electing to renegotiate before the end of the 1 year term.
>
> Name of talent: Andrew Roach
> Name of buyer: Stardust
> Session date: 3/16/2016
> Advertiser/product: Motorola
> First Use Date: 5/17/2016

>First Use Documentation:
>https://www.youtube.com/watch?v=etlYaT_nDCc
>Second renewal term: 5/17/2017 - 5/16/2018
>
>Please inform your client that I would like the following rate for 2nd year use.
>
>Same terms as first year with no exclusivity:
>$3,750 internet only in US and Canada plus foreign broadcast for 1 year use.
>
>Option to renew for one additional, consecutive 1 year term at a 25% increase.
>
>If your client wishes further use - please reply via email or call me directly at <u>818-231-1537</u> prior to the 1-year period expiration date, 5/16/2017."

Mr. Roach's offer was exceedingly generous as the fair market value of his image is substantially higher. Since shooting with Motorola, Mr. Roach has worked for Chevy Impala and was paid $30,350 for a far shorter usage period and in the United States only.

Here, we know Mr. Roach's willingness to accept $3,750 for the US and Canada and $3,750 for any additional country was limited only to an agreement before the expiration of his rights. Of course, as the expiration of his rights grew closer, as in any negotiation, the value of those rights increases. We know Motorola is *still* using Mr. Roach's image for commercial purposes in several countries. Had Motorola lawfully exercised the option in Mr. Roach's good faith offer prior to the rights expiring, Motorola would pay $3,750 for the US and Canada from May 17, 2017 to May 16, 2018 and $4,687.50 from May 17, 2018 to May 16, 2019. Additionally, had Motorola taken advantage of Mr. Roach's low rate offer prior to the expiration of the first term, Motorola would have paid for each additional country wherein it exploited his image.

Motorola is still to this day intentionally violating Mr. Roach's rights and using his image to promote Motorola India, Motorola Poland, and Motorola Ukraine, among others. The license fee for each country for the two-year period would have been $8,438. Use in North America, India, Poland, and Ukraine would have been $33,800. Of course, we need to know through discovery or an affidavit from Motorola how many additional countries Motorola used Mr. Roach's image. Use in any additional countries would multiply the license fee accordingly. This is all notwithstanding any attempts at licensing his image after expiration would have been met with an immediate refusal.

Under the circumstances, the most important issue for Motorola to consider is the risk of significant damages that can be awarded pursuant to Section 3344(a). As a brief reminder, a prevailing plaintiff under Civil Code section 3344 is entitled to economic license fee damages, emotional damages, profits attributable to unlawful use, punitive damages, and mandatory attorney fees.

### History of California Civil Code Section 3344 Protection

The valuable proprietary rights to a person's voice and likeness for commercial purposes has had a long history of legal protection. "No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay." (*Zacchini v. Scripps-Howard Broadcasting Co.* (1977) 433 U.S. 562, 576.)

Under California law, everyone has a right to control how and when the commercial value in his or her identity will be exploited. (*Lugosi v. Universal Pictures* (1979) 25 Cal.3d 813, 824 ["The protection of name and likeness from unwarranted intrusion or exploitation is the heart of the law of privacy."]; *KNB Enterprises v. Matthews* (2000) 78 Cal. App. 4th 362, 366.)

The right of publicity protects "'the very identity or persona of the plaintiff as a human being,'" not the particular photograph of the plaintiff. (*Downing v. Abercrombie & Fitch* (9th Cir. 2001) 265 F.3d 994, 1004 [emphasis], quoting McCarthy, Rights of Publicity and Privacy (1997) § 11.13[C] at 11-72-73; *see also KNB Enterprises v. Matthews*, 78 Cal. App. 4th at 365.) The protection of a person's name or likeness has some parallels to federal patent and copyright law. (*Zacchini*, 433 U.S. at 573.) Both the Copyright Act and the right of publicity protect "a form of intellectual property that society deems to have some social utility." (*Comedy III Productions, Inc. v. Gary Saderup, Inc.* (2001) 25 Cal.4th 387, 399.)

In California, one's right of name, voice, and likeness is protected not only under the common law, but also through Civil Code section 3344, which provides:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent ... shall be liable for any damages sustained by the person or persons injured as a result thereof.
>
> In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to prove his or her deductible expenses. Punitive damages may also be awarded to

the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs. (Civ. Code § 3344(a).)

Pursuant to the Judicial Council of California Civil Jury Instructions 1821A, 3900, and 3905, among others, Mr. Roach will be awarded multiple years of license fee damages for multiple countries, emotional distress damages, potentially profits damages, a strong likelihood of punitive damages, and costs and attorneys' fees.

### Economic License Fee Damages

We are certain that given Motorola's extensive and pervasive unlawful commercial use of Mr. Roach's image, as well as the year over year proven value of his image, a jury would award significant economic license fee damages. In a recent case we took to trial, the jury returned a verdict of $213,000 for a one-year license fee, after the defendant exceeded its original one-year license for which it paid $4,000. Here, Motorola, a multi-national company, knew it ceased having any rights to use Mr. Roach's image yet continued to use him year after year when it knew it had no right to do so, and months after this litigation was filed. Based on Motorola's need to continue use of Mr. Roach's image, year after year, and the number of countries Motorola unlawfully used his image (and continues to do so), Mr. Roach will be awarded no less than $50,000 in license fee damages. Depending on Motorola's response regarding the additional countries it is exploiting Mr. Roach's image, not including the US, India, Poland, and Ukraine, will determine the amount of the fair use license fee.

### Emotional Distress Damages

What is truly shocking about this case is Mr. Roach put Motorola on notice the rights to use his image were expiring. Sue Lee acknowledged Motorola was aware of the expiration date. Even knowing it was violating Mr. Roach's rights, Motorola exceeded

the use and played a game of catch me if you can. Mr. Roach then filed a lawsuit in October 2018. Even after being served with the lawsuit, filing an answer, and being served with discovery, Motorola **continues to intentionally violate Mr. Roach's rights to this very day** for at least Motorola India, Poland, and Ukraine. This lack of control of his personal and proprietary rights has left Mr. Roach feeling utterly disgusted, violated, and angry.

Wrongful use of one's image "impairs the mental peace and comfort of the person." (*Fairfield v. American Photocopy etc. Co.* (1955) 138 Cal.App.2d 82, 86.) "The actual injury involved herein is not limited to out-of-pocket loss. It generally includes 'mental anguish and suffering.'" *Diaz v. Oakland Tribune, Inc.* (1983) 139 Cal.App.3d 118, 137 (emphasis added). The harm the plaintiff is alleged to have suffered is not easily quantifiable, and the amount of damages must necessarily be left to the sound discretion of the jury. *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 64 (emphasis added). "There is no fixed or absolute standard by which to compute the monetary value of emotional distress,' "'and a '"jury is entrusted with the vast discretion in determining the amount of damages to be awarded. ." [Citation.]' " *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1602. The issue of emotional damages "is a genuine one that requires compensation" and must be decided by the "impartial conscience and judgment of jurors . . ." (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 892–893.)

To put it mildly, Mr. Roach is hurt by the way he has been violated. Mr. Roach has worked very hard and invested many years in building value in his image. He survived a brutal process of rejection time and again to be represented as a model and chosen for modeling bookings among thousands of people seeking the same opportunity. Models have next to no protection against the unlawful uses of their images other than naked trust. Mr. Roach trusted that Motorola would never violate his personal and

proprietary rights, but that did not happen. Instead of complying with the agreement, even after receiving and confirming notice of the same, and deleting any use of Mr. Roach's image from its marketing after its limited rights expired, Motorola completely thumbed its nose at Mr. Roach, and did so in utter disregard of the emotional impact such actions would have him. Such indifference to Mr. Roach's rights of privacy, publicity, and feelings will not go unanswered.

California law is the equalizer. The law allows Mr. Roach to testify directly to the jury, without interference of expert testimony, or preclusion by the judge, to talk about every type of emotional distress felt as a result of the violation of his image and privacy rights. Mr. Roach will seek separate monetary amounts for each type of emotional distress damage he suffered as a result of the actions in this case. A chart will be placed in front of the jury with a line next to each type of damage. Mr. Roach will testify how it felt to be violated by Defendant's unwillingness to obey the law and submit to his rights.

Mr. Roach will testify about each item of damage for which he is entitled to separate monetary compensation, including, anxiety, frustration, shock, disbelief, anger, despair, disgust, lack of control, hopelessness, defenselessness, powerlessness, worthlessness, annoyance, inconvenience, and a general feeling of being violated as a result of Motorola's unauthorized use of his personal and proprietary rights. "<u>The amount of damages must include an award for each item of harm</u> that was caused by Defendant's wrongful conduct, even if the particular harm could not have been anticipated." California Civil Jury Instruction 3900 (emphasis added).

Throughout the entirety of Mr. Roach's career, he has never had his image rights violated. Mr. Roach will present very well to a jury. In one 3344 case we took to a jury, we received the largest emotional damages award in California history in the amount of $910,000, with facts weaker than those present here. No state in the country values a

person's right of publicity more than California, as evidenced by the strength of its statute. We are confident a California jury will protect its own and protect the economy the modeling, acting, and entertainment community brings to California which is a strong policy reason behind the statute. We are confident a jury will award Mr. Roach no less than $250,000 in emotional distress damages, and likely more.

### Profits

A plaintiff is entitled to all profits attributable to the unlawful use of his or her image. Of course, we do not have the most basic discovery from Motorola regarding profits damages. After discovery is complete, we will be in a better position to evaluate the level of profits damages, if any.

### Punitive Damages

Mr. Roach will be awarded punitive damages. The evidence is overwhelming that Motorola treated him in an oppressive manner and exhibited a blatant disregard for his rights and the law. In California, exemplary or punitive damages are available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal.Civ.Code § 3294(a) (West Supp.1992). The statute defines "malice" in pertinent part as "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Id. § 3294(c)(1) (emphasis added).

One of the purposes of a punitive damage award is to deter repetition of unlawful conduct. "[O]bviously, the function of deterrence ... will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort." (Neal v. Farmers Ins. Exchange (1978) 21 Cal.3d 910, 928.) "[P]unitive damage awards should not be a routine cost of doing business that an industry can simply pass on to its customers

through price increases, while continuing the conduct the law proscribes." (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 427 (conc. opn. of Brown, J.).)

It is undeniable that Motorola knew it could not exploit Mr. Roach's image after May 17, 2017. Mr. Roach's May 2016 contract confirmed this fact. One month prior to expiration, Mr. Roach sent Motorola notice and Motorola's production company, Los York, confirmed Motorola was aware its rights to use Mr. Roach's image would expire May 17, 2017. Motorola promised to take down Mr. Roach's image prior to May 17, 2017. Motorola intentionally violated Mr. Roach's rights by continuing to use his image for commercial purposes after May 17, 2017, even though it confirmed it knew it could not lawfully do so.

Due to Motorola's continuous, incessant unlawful use of his image, Mr. Roach filed a lawsuit against Motorola on October 26, 2018. Did the filing of litigation deter Motorola's intentional unlawful conduct? No. Even after Motorola filed its answer denying liability, after receiving extensive discovery to which it still has not provided responses, Motorola continues to bully Mr. Roach and abuse his rights to this very day. What does Motorola need to act lawfully and in accordance with Mr. Roach's rights? A significant punitive damages award will likely deter Motorola's intentional unlawful conduct in the future.

Apparently, Motorola lives in a world where anyone in society can take what he or she chooses without permission so long as it doesn't get caught. Fortunately, we live in a civilized society where most of us learned early in life not to touch, take, or use anything without proper permissions. We are confident the jury will protect Mr. Roach's rights and make clear that one must never violate the personal and proprietary rights of another knowing it has no permission to do so. Mr. Roach will seek a punitive damages award of up to three times the total liability verdict, i.e., the sum of the economic, emotional, and

profits damages.

### **Mandatory Attorneys' Fees and Costs**

A prevailing plaintiff under Civil Code section 3344 is entitled to attorney's fees and costs. (Civ. Code, § 3344(a).) Mr. Roach will be awarded fees and costs which are accruing daily:

| | |
|---|---|
| Attorney fees: | $15,615.00 |
| Costs: | $550.90 |
| Total fees and costs: | $15,780.90[1] |

The damages under a 3344 claim after liability is established are significant. We have litigated over 50 right of publicity cases. Although we have settled the majority, we also have tried these cases to verdict. Never once have we received less from a jury than we were willing to settle for at mediation short of trial. We believe this case should settle, however, it will require that Motorola recognize the certainness of liability, the teeth in the statute, and the severity of the exposure.

Based on the foregoing, Mr. Roach's bottom line settlement demand is $250,000, open until **February 12, 2019**. This number will substantially increase at an in-person mediation, and further increase throughout the pendency of the case.

Very truly yours,

JOHNSON & JOHNSON LLP

Douglas L. Johnson

---

[1] Any additional fees and costs incurred to effect settlement will accrue on a going basis and will be determined at the signature stage of settlement.